IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| TEMPIE ANN BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV57 |
| | ) | |
| ERIC K. SHINSEKI, Secretary, | ) | |
| Department of Veterans | ) | |
| Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Defendant's Motion for Summary Judgment (Doc. 20). Defendant has filed a memorandum in support of the motion (Doc. 21), Plaintiff has filed a response in opposition (Doc. 27-1), and Defendant has filed a reply (Doc. 36). Defendant's motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.[1]

### I. BACKGROUND

Viewed in the light most favorable to Plaintiff, the evidence shows the following.

---

[1] Also pending is Defendant's Motion to Strike (Doc. 34). Because this court finds that Defendant is entitled to summary judgment on all claims without striking any of the materials submitted by Plaintiff, that motion will be denied as moot.

Tempie Ann Bell ("Plaintiff") is a registered nurse who was employed at the Durham Veterans Affairs Medical Center ("DVAMC") for a number of years. She was terminated effective March 11, 2011. From January 2010 until her termination, Plaintiff was employed as a staff nurse in a medical/surgical ward. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (Doc. 21) at 2.) At the time she was terminated, Plaintiff had been absent without leave since November 15, 2010.

Plaintiff worked at DVAMC as a diabetes educator from 2005 through January 2010. (Pl.'s Resp. in Opp'n to Summ. J. ("Pl.'s Resp."), Part 4, Affidavit of Tempie Bell ("Bell Aff.") (Doc. 30-5) ¶ 3.) She had been assigned to that position as part of a settlement agreement in an earlier discrimination suit. (See Government's Exhibit L ("GE L") attached to Def.'s Mem. (Doc. 24-6).) In the event that Plaintiff did not obtain certification as a diabetes instructor within the timeframe specified in the settlement agreement, Defendant was permitted to reassign her to "a new position [within DVAMC] where she has the requisite skills and knowledge to perform the essential functions of the position." (Id. at 5.)[2] As amended by a

_____

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

supplemental agreement, Plaintiff was required to become certified by May 31, 2007. (Id. at 9.) Defendant sent Plaintiff a notice in September 2009 reminding her of the certification obligation and providing a 120-day extension. (GE O (Doc. 24-11) at 2.) Plaintiff never obtained certification as a diabetes educator.

Effective January 25, 2010, Plaintiff was reassigned from her position in diabetes education to a ward nursing position. (See GE O (Doc. 24-11) at 3.) The requirements of the ward nursing position were modified to account for Plaintiff's work restrictions. (See id.; see also GE D-1 (Doc. 26-2).) Despite these modifications, Plaintiff found the ward nursing job extremely difficult. (Bell Aff. (Doc. 30-5) ¶ 8.)

Plaintiff protested the reassignment to ward nursing and asked that she be allowed to continue her role in diabetes education. (Id. ¶ 7.) In 2007, the VA approved funding for Plaintiff to pursue a Master's degree. (Id. ¶ 5.) From 2007 to 2009 – the period Plaintiff was working on her degree – the condition in the settlement agreement that she obtain the diabetes education certification was not mentioned. (Id. ¶ 6.) It was her understanding from talking to her supervisors that

- 3 -

she should focus her energy on completing the Master's degree instead of worrying about the certification.[3] (Id.)

Although Plaintiff was able to find administrative work in another section of DVAMC in late 2009 or early 2010, she was not permitted to take that position. (Pl.'s Resp. Part 1, Ex. 5, Testimony of Joseph Smith at EEOC Hr'g (Doc. 27-5) at 5-8.) However, her preceptor felt that it was unsafe for Plaintiff to be assigned to a ward with her medical limitations. (Pl.'s Resp. Part 1, Ex. 7, Sharon Faison Testimony before EEOC (Doc. 27-7) at 5.)

On August 10, 2010, Plaintiff fell at work. (Bell Aff. (Doc. 30-5) ¶ 9.) She had been in her usual health when she left home that morning. (Id.) Plaintiff was summoned to a meeting with Gwen Waddell-Schultz, her second-line supervisor, around noon that day. (Id.) During that meeting, Plaintiff became

---

[3] Plaintiff suggests that she should never have been reassigned because she had been doing well as a diabetes educator even without certification, and Defendant had waived the certification condition by waiting more than two-and-a-half years to enforce that provision of the settlement agreement. For reasons addressed below, this court finds that any discriminatory or retaliatory motive that could be inferred from the allegedly improper transfer is insufficient to rebut the proffered reason for Plaintiff's discharge. See infra Section III.C. Furthermore, Plaintiff has presented no evidence that she could have performed the duties of a diabetes educator at any time during her absence without leave – either with or without reasonable accommodation - and the notes from her physicians reflect a general inability to return to work in any role.

- 4 -

distraught when Ms. Waddell-Schultz threatened to suspend her and report her to the nursing board. (Id.) Although Plaintiff had had difficulty performing her job as a ward nurse, she had not been told that she was providing substandard care or otherwise failing to perform her duties. (Id.)

After her meeting with Ms. Waddell-Schultz, Plaintiff went to the employee health office, where she passed out. (Id. ¶ 10.) When Plaintiff regained consciousness, she was on the floor and felt pain in her face, left shoulder, and left knee. (Id. ¶ 11.) She heard Jackie Rogers tell someone that Plaintiff had fallen and hit her head on the desk. (Id. ¶ 12.) Plaintiff was helped into a wheelchair and taken from the room. (Id.) She was seen first by a doctor at DVAMC and later by a doctor in the emergency room at Durham Regional Hospital.

Over the next several days, Plaintiff had MRIs taken and was diagnosed with a tear of the meniscus of her left knee and a labral tear in her left shoulder. (Id. ¶¶ 13-14.) Dr. David Dellaero, her orthopaedist, testified that Plaintiff's injuries were consistent with a fall. (Pl.'s Resp. Part 3, Ex. 1, Deposition of David T. Dellaero ("Dellaero Dep.") (Doc. 29-1) at 20-21.)

The day after her injury, Plaintiff filed a claim with the U.S. Department of Labor Office of Worker's Compensation

- 5 -

Programs ("OWCP"). (See GE C-1 (Doc. 22-11).) DVAMC took the position that Plaintiff did not fall but rather was gently lowered to the floor. In support of this position, DVAMC staff produced a reenactment of the events that included photographs, a description of events, and witness statements. (See Pl.'s Resp. Part 2, Ex. 4, Reenactment Doc. 28-4).) According to Dr. Dellaero, the injuries were inconsistent with Plaintiff having been assisted to the ground. (Dellaero Dep. (Doc. 29-1) at 29.)

OWCP denied the claim because it determined that Plaintiff's injuries were not work-related. Plaintiff's second request for reconsideration was denied in a letter dated April 16, 2013. (See GE J (Doc. 24-4).) Except for Plaintiff's supervisor completing the Supervisor's Report section of the CA-1 on August 12, 2010, no other person in nursing service who was not an eyewitness to the incident on August 10, 2010, participated in the handling of Plaintiff's OWCP claim. (GE C, Declaration of Deborah G. Linda (Doc. 22-10) ¶ 5.)

Plaintiff also requested leave under the Family and Medical Leave Act. Pursuant to that act, eligible employees are entitled to "12 workweeks of leave during any 12-month period" for several reasons, including "a serious health condition that makes the employee unable to perform the functions" of his or her position. 29 U.S.C. § 2612(a)(1). After exhausting her

- 6 -

other leave, Plaintiff was carried as AWOL until her FMLA leave was approved.  One of Plaintiff's physicians completed a Certification of Health Care Provider (Form WH380) on September 30, 2010.  (See GE D-4 (Doc. 26-5) at 4.)  That form stated that Plaintiff would likely remain incapacitated from August 10, 2010, through November 13, 2010.  (Id. at 2.)  On November 22, 2010, Plaintiff's timecards were changed to reflect the approval of her FMLA request for the dates cited in her WH380.[4]  (See Pl.'s Resp. Part 2 (Doc. 28-7).)  Plaintiff was not granted leave without pay at any time after November 14, 2010. (GE B, Declaration of Jerry Freeman (Doc. 22-1) ¶ 11.)  Under VA policy, leave without pay is a matter of administrative discretion.  (See GE B-7 (Doc. 22-8).)

Plaintiff did not return to work at any time after August 10, 2010.  From that date until her termination, she provided a number of documents and notes from her doctors indicating that she could not return to work due to various health conditions.  Collectively, those notes show a period of uninterrupted incapacity from the date of her injury through the effective date of termination, and continuing indefinitely into

---

[4] Plaintiff had actually exhausted her FMLA leave on November 1, 2010; however, she was granted leave without pay from November 1, 2010, to November 14, 2010.  (GE B, Declaration of Jerry Freeman (Doc. 22-1) ¶ 5.)

the future.  (See GE D-3 through D-11 (Docs. 26-4 through 26-12).)  On December 11, 2012, Plaintiff's application for disability retirement from the VA was approved. (GE E-2 (Doc. 26-13).)

Defendant issued return to duty letters on December 27, 2010, and January 11, 2011, based on Plaintiff's continuing AWOL status.  (GE B-3 (Doc. 22-4) and GE B-4 (Doc. 22-5), respectively.)  After she did not return to duty, Plaintiff was issued a notice of proposed discharge on February 1, 2011.  (GE B-5 (Doc. 22-6).)  The notice stated that the proposed removal from federal service was based on Plaintiff's unauthorized absence from her duty station from November 15, 2010, through January 31, 2011.  (Id.)  On February 25, 2011, DVAMC Director Ralph T. Gigliotti sustained the charges and removed Plaintiff, effective March 11, 2011.  (GE B-6 (Doc. 22-7).)

Since her discharge, Plaintiff has sought other employment in nursing education or administration without success.  (Bell Aff. (Doc. 30-5) ¶¶ 19-20.)  As of his deposition on March 6, 2013, Dr. Dellaero thought Plaintiff would "potentially" be able to work in such a position now.  (Dellaero Dep. (Doc. 29-1) at 19.)

Plaintiff has filed several other EEO complaints against Defendant in the past, two of which are still in the

- 8 -

administrative process: Case No. 2004-0558-2010100080 and Case No. 2004-0558-2010103561.

## II.   LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  Id. at 255.  A mere factual dispute is insufficient to prevent summary

- 9 -

judgment; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## III. ANALYSIS

The Amended Complaint raises disability discrimination and retaliation claims based on Plaintiff's termination and Defendant's alleged failure to provide relief or reasonable accommodation. Defendant has moved for summary judgment on both claims. For the reasons that follow, Defendant's motion for summary judgment will be granted.

### A. Exhaustion of Administrative Remedies

This court first addresses the scope of the actionable claims in this case. Before instituting a Rehabilitation Act lawsuit, a plaintiff must first exhaust her administrative remedies under the same standards as those applied in Title VII actions. Spencer v. Ashcroft, 147 F. App'x 373, 375 (4th Cir. 2005); Snead v. Bd. of Educ. of Prince George's Cnty., 815 F. Supp. 2d 889, 894 (D. Md. 2011). As part of the exhaustion requirement, an employee must contact an EEO counselor "within

- 10 -

45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Only those claims "stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

Subject matter jurisdiction in this case arises from Plaintiff's administrative exhaustion of her claims raised in Case No. 2004-0558-2011102368. (Amended Complaint ("Am. Compl.") (Doc. 9) ¶ 17.) Plaintiff initiated contact with an EEO counselor in that case on March 15, 2011. (GE A-3 (Doc. 21-5) at 2.) After her complaint could not be resolved informally, Plaintiff filed a formal complaint of discrimination on April 13, 2011. The following claim was accepted for investigation:

> Whether on the bases of disability and reprisal (prior EEO activity), [Plaintiff] was treated in a disparate manner in matters regarding termination on March 2, 2011, when she was discharged from employment with the Department of Veterans Affairs from the position of Registered Nurse II.

- 11 -

(GE A-4 (Doc. 21-6) at 3-4.)  A report was filed after an investigation, and the matter was transferred to the VA Office of Employment Discrimination Case Adjudication for final agency decision.  (GE A, Declaration of Odessa Wright (Doc. 21-2) ¶¶ 6-7.)  A final agency decision was not issued.

This court finds that any claim based on Plaintiff's reassignment from diabetes education to ward nursing is not actionable in the instant lawsuit because such a claim would be both time-barred and outside the scope of the administrative investigation in Case No. 2004-0558-2011102368.[5]  A claim based on the reassignment would be time-barred because it occurred over a year before Plaintiff contacted an EEO counselor in this case, far outside the forty-five day filing period, and Plaintiff has not suggested any equitable doctrine that would limit or toll the filing period.

In this case, Plaintiff's termination is the only alleged discriminatory or retaliatory act that occurred during the forty-five day period preceding her contact with an EEO counselor in Case No. 2004-0558-2011102368.  Accordingly, this court only has subject matter jurisdiction to address

---

[5] This court also notes that the reassignment is one basis for Plaintiff's claims in Case No. 2004-0558-2010100080, which is still in the administrative process.

- 12 -

Plaintiff's claims that her discharge was discriminatory, retaliatory, or both.  Plaintiff may, however, use other alleged prior acts as background evidence in support of her timely filed claims based on her termination.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

**B.  Disability Discrimination**

Defendant first moves for summary judgment on Plaintiff's disability discrimination claim.[6]  The Rehabilitation Act prohibits executive agencies from discriminating against their employees on the basis of disability.  See 29 U.S.C. § 794.  The substantive standards for determining liability under the Rehabilitation Act are the same as those under the Americans with Disabilities Act.  Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995).

In the absence of direct evidence of discriminatory intent, disability discrimination claims under the Rehabilitation Act proceed under the McDonnell Douglas burden-shifting framework. Perry v. Computer Scis. Corp., 429 F. App'x 218, 219-20 (4th Cir. 2011) (per curiam) (citing Ennis v. Nat'l Ass'n of Bus. &

---

[6] The Amended Complaint cites Title VII as the basis for this claim.  Disability discrimination, however, is not prohibited by Title VII.  See 42 U.S.C. § 2000e-16 (prohibiting discrimination in federal employment based on race, color, religion, sex, and national origin).  This court will address the claim as if it had been raised under the Rehabilitation Act.

Educ. Radio, 53 F.3d 55, 57-58 (4th Cir. 1995)).  Under that framework, a plaintiff must first present a prima facie case. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010).  To establish a prima facie case of discriminatory termination against a federal employer under the Rehabilitation Act, a plaintiff must show that (1) she has a disability, (2) she is otherwise qualified to perform the job, and (3) she was terminated solely because of her disability. See Justus v. Junction Ctr. for Indep. Living, Inc., 673 F. Supp. 2d 462, 464-65 (W.D. Va. 2009) (citing Kinsella v. Rumsfeld, 320 F.3d 309, 314 (2d Cir. 2003); Baird v. Rose, 192 F.3d 462, 467-69 (4th Cir. 1999)).  "If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action."  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).  If an employer does so, "the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'"  Merritt, 601 F.3d at 294 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

For purposes of the summary judgment motion, Defendant does not contest that Plaintiff was disabled within the meaning of

- 14 -

the Rehabilitation Act after August 10, 2010. Plaintiff's prima facie case turns on whether she has presented evidence that she was qualified to perform her job, with or without reasonable accommodation, at the time she was terminated. For the reasons that follow, this court finds that she has failed to do so.

Plaintiff bears the burden of establishing that she was qualified. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 462 (4th Cir. 2012). In determining whether Plaintiff was qualified, this court must decide "(1) whether she could 'perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue,' and (2) if not, whether 'any reasonable accommodation by the employer would enable [her] to perform those functions.'" Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994) (alteration in original) (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).

At the time she was discharged, Plaintiff could not perform the essential functions of her job. A "regular and reliable level of attendance is a necessary element of most jobs." Id. (collecting cases); see also Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) ("[A]n employee who cannot attend work cannot perform the essential functions of his job. This is true even when the

- 15 -

absences are with the employer's permission."). Plaintiff did
not return to work after her injury on August 10, 2010. Between
that date and her termination approximately six months later,
she submitted a number of medical documents and notes indicating
that she was unable to work. (See GE D-3 through D-11 (Docs.
26-4 through 26-12).) Defendant issued return to duty letters
on December 27, 2010, and January 11, 2011, based on Plaintiff's
continuing AWOL status. On February 25, 2011, DVAMC Director
Gigliotti sustained the charges lodged in an earlier proposed
notice of termination and removed Plaintiff, effective March 11,
2011.

This court now considers whether there is evidence that any
reasonable accommodation would have enabled Plaintiff to meet
the requirements of her job.[7] Although a "period of leave can in
some circumstances be a reasonable accommodation required of an
employer," Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d
638, 652 (1st Cir. 2000); see also Kitchen v. Summers Continuous
Care Ctr., LLC, 552 F. Supp. 2d 589, 595 (S.D. W. Va. 2008)

---

[7] It is unclear whether Plaintiff has stated a separate
failure to accommodate claim. If she has, however, she has not
established a prima facie case because she has not shown that
she was qualified for any position, including that of diabetes
educator, during the months leading up to her termination. See
Wilson v. Dollar General Corp., No. 12-1573, 2013 WL 2130939, at
*7 (4th Cir. May 17, 2013) (plaintiff must show that he could
perform the essential functions of the position with reasonable
accommodation).

- 16 -

(collecting cases), an employer is not required to "wait indefinitely" for an employee's medical condition to improve. Myers, 50 F.3d at 283; see also Halpern, 669 F.3d at 465 ("[T]he indefinite duration and uncertain likelihood of success of [the plaintiff's] proposed accommodation renders it unreasonable."); Byrne v. Avon Prods., Inc., 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA."); Nowak v. St. Rita High Sch., 142 F.3d 999, 1004 (7th Cir. 1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."); McNeil v. Scotland Cnty., 213 F. Supp. 2d 559, 569-70 (M.D.N.C. 2002). Here, at the time Plaintiff was discharged, she had been absent without leave for several months and, based on her medical notes, would continue to be so indefinitely. In addition, Plaintiff has presented no evidence addressing when she would have been able to return to active duty in any role. Accordingly, this court finds that, as a matter of law, Defendant was not required to offer Plaintiff medical leave as a reasonable accommodation for her disability.

Plaintiff also argues that Defendant failed to engage in an interactive process to identify a reasonable accommodation as

required by law.[8]  The duty to engage in such a process is
"generally triggered when an employee communicates to his
employer his disability and his desire for an accommodation for
that disability."  Wilson v. Dollar General Corp., No. 12-1573,
2013 WL 2130939, at *9 (4th Cir. May 17, 2013).  Initially, this
court notes that the record is unclear as to whether Plaintiff
in fact requested a reasonable accommodation during the period
covered by the administrative proceedings that led to this case.
Even assuming that Defendant's duty to engage in an interactive
process was triggered, however, "an employer who fails to engage
in the interactive process will not be held liable if the
employee cannot identify a reasonable accommodation that would
have been possible."  Id.  Plaintiff suggests that reassignment
to her former role as a diabetes educator would have been a
reasonable accommodation.  Assuming reassignment would have been
reasonable, Plaintiff has presented no evidence that she would
have been able to perform the essential functions of any job at
the hospital, including diabetes educator, during the months she

---

[8] To the extent Plaintiff's argument is based on Defendant's
alleged failure to engage in an interactive process with respect
to her reassignment, she has failed to exhaust the claim.  This
court will consider the argument as it relates to Plaintiff's
discharge.

- 18 -

was absent without leave.[9]  Instead, the undisputed evidence
shows that she was incapacitated during that period and could
not report for duty in any role.  Accordingly, this court finds
that Plaintiff's proposed accommodation would have been futile
and that any requested leave would have been unreasonable as a
matter of law under the circumstances presented by this case.

Based on the foregoing, this court will grant Defendant's
motion for summary judgment as to Plaintiff's disability
discrimination claim.[10]

## C.  Retaliation

Defendant also moves for summary judgment on Plaintiff's
claim that she was discharged in retaliation for her prior EEO
activity.  To establish a prima facie retaliation claim under
the Rehabilitation Act, a plaintiff must show that "(1) [s]he
engaged in protected conduct, (2) [s]he suffered an adverse
action, and (3) a causal link exists between the protected
conduct and the adverse action."  See Reynolds v. Am. Nat'l Red

---

[9] That Plaintiff is currently searching for work in
education and administration is irrelevant to what she was able
to do at the time she was terminated.

[10] Even if Plaintiff had established a prima facie case of
disability discrimination, she has failed to rebut the
legitimate, nondiscriminatory reason proffered by Defendant,
that is, that she was terminated based on her continuing absence
without leave.  This issue will be addressed in greater detail
in relation to the retaliation claim.

- 19 -

<u>Cross</u>, 701 F.3d 143, 154 (4th Cir. 2012) (stating the standard for ADA retaliation claims).

For purposes of this motion, this court assumes Plaintiff has satisfied her burden of presenting a prima facie case of retaliation.  Defendant does not dispute that Plaintiff has engaged in protected activity and that her termination constitutes an adverse employment action.  As to the third element, several of Plaintiff's EEO complaints were pending at the time of her termination and both the proposing and the deciding official were aware of her prior EEO activity (<u>see</u> GE F (Doc. 23-14) at 2; GE G (Doc. 24-1) at 2), presenting some evidence that her protected activity may have been causally connected to her termination.  However, Defendant has proffered a legitimate, nonretaliatory reason for discharging Plaintiff, that is, her continuing absence without leave for a number of months, and this court finds that this rationale has not been rebutted so as to call it into question as pretext.

As Plaintiff correctly notes, evidence that an employer has provided false justifications for an adverse employment action, or different justifications at different times, supports a finding of pretext.  <u>See, e.g.</u>, <u>E.E.O.C. v. Sears Roebuck & Co.</u>, 243 F.3d 846, 852-53 (4th Cir. 2001) ("Indeed, the fact that [the defendant] has offered different justifications at

- 20 -

different times for its failure to hire [the plaintiff] is, in and of itself, probative of pretext.").  In this case, however, no evidence has been presented that Defendant has ever offered any rationale for discharging Plaintiff other than her continuing and extended absence without leave.  Instead, Plaintiff contends that retaliatory motive in regard to her termination may be inferred because Ms. Waddell-Schultz provided conflicting reasons for Plaintiff's reassignment during a deposition.  However, this court finds the allegedly contradictory statements entirely compatible.  Ms. Waddell-Schultz testified that Plaintiff's former position, which was vacant at the time, was eliminated several months after the reassignment due to DVAMC's budget deficit.  (Pl.'s Resp. Part 2, Gwendolyn Waddell-Schultz Testimony before EEOC (Doc. 28-3) at 3-4.)  Ms. Waddell-Schultz did not know there would be a deficit at the time she asked Plaintiff to comply with the settlement agreement (id. at 4), and, at least in the submitted excerpt, she never suggested that the reassignment had anything to do with the budget.  Accordingly, this court finds that Plaintiff has produced no evidence of a false or contradictory explanation that would support a finding of pretext in this case.

Plaintiff also cites other evidence from several months prior to her termination in an attempt to raise an inference of retaliatory motive: (1) her allegedly improper reassignment from diabetes education to a ward nursing position her preceptor felt was unsafe; (2) being required to submit a new SF-71 leave request form every day she had an hour designated as leave without pay; (3) the absence of warnings that she needed to obtain her diabetes education certification as required by the settlement agreement; (4) the absence of documentation indicating that she had ever failed to provide appropriate patient care; and (5) the agency's alleged attempt to hide what occurred during the August 10, 2010 incident through the reenactment it produced.

This evidence is insufficient to call into question the legitimacy of Defendant's rationale for discharging Plaintiff. First, none of the evidence relates directly to the termination; instead, the evidence addresses events that occurred months earlier, and Plaintiff has not presented evidence to explain how these allegations relate to her discharge. Second, neither Director Gigliotti nor Ms. Waddell-Schultz – the deciding and proposing official, respectively – requested, initiated, or participated in the reenactment. (See GE C (Doc. 22-10) ¶ 6.) Furthermore, it is unclear what, if any, other role Director

- 22 -

Gigliotti or Ms. Waddell-Schultz may have played in the OWCP process. Third, Plaintiff has presented no evidence – and does not appear to suggest – that any hospital employee had been retained under similar circumstances, that is, an employee who had not been discharged despite having remained absent without leave for several months and who would continue to remain absent indefinitely.

For these reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### D. Defendant's Motion to Seal

Also pending is Defendant's Motion to File Government Exhibits Under Seal (Doc. 25). Plaintiff has not opposed the motion. Defendant seeks to seal certain of its summary judgment exhibits which include copies of medical records and other documents that contain details of Plaintiff's medical conditions.

Because these exhibits were submitted in connection with a summary judgment motion, they are judicial records subject to

- 23 -

the First Amendment right of access.[11]  See Rushford v. New

Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).

Accordingly, this court may deny access to those exhibits "only

on the basis of a compelling governmental interest, and only if

the denial is narrowly tailored to serve that interest." Stone

v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir.

1988).  In deciding whether this standard has been satisfied,

this court must

> [W]eigh the appropriate competing interests under the
> following procedure: it must give the public notice of
> the request to seal and a reasonable opportunity to
> challenge the request; it must consider less drastic
> alternatives to sealing; and if it decides to seal it
> must state the reasons (and specific supporting
> findings) for its decision and the reasons for
> rejecting alternatives to sealing.

Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th

Cir. 2004).

---

[11] Defendant cites Federal Rule of Civil Procedure 5.2 in
support of its motion.  That rule, however, addresses the extent
to which the following information must be redacted from court
filings: (1) social security numbers, (2) taxpayer
identification numbers, (3) birth dates, (4) individuals known
to be minors, and (5) financial account numbers.  Fed. R. Civ. P.
5.2(a).  A court may, for good cause, require redaction of
additional information or limit a nonparty's remote electronic
access.  Id. 5.2(e).  Because this court is not convinced that
Rule 5.2 applies to medical records except to the extent those
records contain social security numbers, birth dates, or other
identifying information, it will address Defendant's motion
under the general standard for motions to seal adopted by the
Fourth Circuit.

The motion to seal has been publicly docketed since April 19, 2013. Thus, the public has had "notice of the request to seal and a reasonable opportunity to challenge the request." See id. The docket reflects no action by an interested party contesting an order to seal.

If the request is narrowly tailored, sensitive medical information may be sealed. See, e.g., Rock v. McHugh, 819 F. Supp. 2d 456, 475 (D. Md. 2011); Briggs v. Marriott Int'l, Inc., 368 F. Supp. 2d 461, 463 n.1 (D. Md. 2005), aff'd, 205 F. App'x 183 (4th Cir. 2006) (per curiam). This court notes initially that Defendant does not seek to seal the entire summary judgment record. Instead, Defendant's request is limited to only those materials that include information related to Plaintiff's medical conditions. Because Defendant did not contest that Plaintiff was disabled for purposes of the summary judgment motion, this court has not considered the nature of Plaintiff's medical conditions except to the extent those conditions prevented Plaintiff from being able to work in any capacity. Accordingly, unlike many other disability discrimination cases, these records would have little value in furthering the public oversight of the judicial process. Furthermore, having considered less drastic alternatives to sealing, this court finds that redacting the confidential portions of the documents

would be ineffective because the relevant nonconfidential material has already been included in the parties' briefs, which were not filed under seal, and this opinion.

Based on the foregoing, this court finds that the parties' confidentiality concerns are supported by a compelling government interest in favor of sealing and cannot be adequately protected by alternatives to sealing. For these reasons, Defendant's motion to seal will be granted.

IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED.** **IT IS FURTHER ORDERED** that Defendant's Motion to File Government Exhibits Under Seal (Doc. 25) is **GRANTED** and that Defendant's Motion to Strike (Doc. 34) is **DENIED** as **MOOT.** A Judgment consistent with this opinion will be entered contemporaneously with this order.

This the 20th day of June, 2013.

_____
United States District Judge